**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

| | | |
|---|---|---|
| **DEMETRIOUS-YADIRFA** | : | |
| **SMITH,** *et al.*, | : | |
| | : | |
| **Plaintiff,** | : | **Case No. 2:21-cv-00931** |
| | : | |
| **v.** | : | **Chief Judge Algenon L. Marbley** |
| | : | |
| **MANLEY, DEAS, AND** | : | **Magistrate Judge Kimberly A. Jolson** |
| **KOCHALSKI, LLC,** *et al.*, | : | |
| | : | |
| **Defendants.** | : | |

**OPINION & ORDER**

This matter is before the Court on numerous motions from multiple parties, including motions to dismiss from Defendants Judge Ruehlman (ECF No. 23, 25), Manley, Deas, and Kochalski, LLC (ECF No. 34), Hamilton County Land Reutilization Corporation (ECF No. 41), and Volunteer Lawyers for the Poor (ECF No. 44). This Court also entertains Plaintiffs' motions for leave to file a second amended complaint (ECF Nos. 19, 45), to intervene (ECF No. 47), and to restrict an exhibit (ECF No. 48). Finally, Defendant Hamilton County Land Reutilization Corporation seeks leave to file supplemental memoranda (ECF No. 45). For the reasons set forth below, Defendants' Motions to Dismiss (ECF Nos. 23, 25, 34, 41, 44) are **GRANTED**. Defendant Landbank's Motion for Leave to File Supplemental Memoranda (ECF No. 45) and Plaintiffs' Motion to Restrict Exhibit #37 (ECF No. 48) are also **GRANTED**. Plaintiffs' Motion for Leave to File Second Amended Complaint (ECF No. 19), Motion for Leave to File Second Amended 5.5 Million Dollar Lawsuit (ECF No. 37), and Motion to Intervene (ECF No. 47) are **DENIED**. Defendant Judge Ruehlman's additional motion to dismiss (ECF No. 26) is **DENIED AS MOOT**.

1

# I.     BACKGROUND

## A.     Factual Background

At its core, Plaintiffs' First Amended Complaint (ECF No. 18) centers on the world of high-risk mortgage loans and rampant foreclosures that characterized the housing bubble of the mid- to late-2000s. Plaintiffs' alleged claims range across a wide array of federal laws and constitutional provisions; their facts, though sparse, revolve around an alleged conspiracy between banks, courts, legal services, and public agencies to deprive low-income and minority homeowners of their houses and their rights.

In 2002, Plaintiffs Demetrious-Yadrifa Smith and Amy-Kathleen Smith (collectively, "the Smiths") purchased property at 4703 Winona Terrace, Cincinnati, Ohio, subject to a mortgage from ABN AMRO Mortgage Group. (*See* ECF No. 34-2 at 7).[1] This mortgage, which allowed the Smiths to borrow $100,000 over 30 years, was assigned to LaSalle Bank Midwest National Association ("LaSalle") in March 2008. (*Id.* at 7, 18). LaSalle then merged with Bank of America, N.A. ("Bank of America"); concurrently, the mortgage was re-assigned from Lasalle to Bank of America. (*Id.* at 19–23). In the meantime, the Smiths filed for Chapter 13 bankruptcy in the Southern District of Ohio. (*Id.* at 27 ¶ 6). Margaret Burks, who was appointed as the non-party Chapter 13 trustee, was receiving Mr. Smith's mortgage payments intended for ABN AMRO. (ECF No. 18 at 3). In turn, Ms. Burks distributed the mortgage payments to foreclosure and bankruptcy attorney as "corporate fee advances." (*Id.* at 4). That case was terminated on October 14, 2011. (ECF No. 34-2 at 27).

---

[1] As the factual allegations in Plaintiffs' First Amended Complaint are piecemeal and lack continuity, this Court relies heavily on other exhibits in the briefing to construct the background of the case.

After the Smiths fell behind on their mortgage payments, Bank of America initiated a foreclosure action in the Court of Common Pleas for Hamilton County, Ohio. (*Id.* at 1–6; ECF Nos. 18 at 3; 18-2 at 9). Bank of America is represented by Manley, Deas, and Kochalski, LLC ("MDK"), in that proceeding, which is still ongoing: it has been removed by the Smiths to this Court, remanded by Judge Dlott, appealed to the state appellate court and sent back down, then removed to the Southern District of New York and finally remanded back to the Common Court of Pleas for Hamilton County. *See generally Bank of America, N.A. By LaSalle v. Smith, et al.*, 2017 WL 1426513 (S.D. Ohio Apr. 21, 2017); *Bank of America, N.A. v. Smith*, 2018 WL 4353598 (Ohio. Ct. App. Sept. 12, 2018). The Court of Common Pleas ruled against the Smiths and entered judgment on their property, and the Smiths' appeal of that decision is now pending before the state appellate court. (ECF Nos. 34 at 6; 34-5).

Defendant Judge Ruehlman of the Court of Common Pleas was assigned to the foreclosure proceeding. The Smiths sought to disqualify Judge Ruehlman based on allegations that he is biased against homeowners. (ECF Nos. 18 at 4; 34 at 5). The disqualification efforts were, however, rejected by the Supreme Court of Ohio in February 2019. (ECF No. 34-4). More generally, the Smiths state that the judges of the Court of Common Pleas for Hamilton County have conflicts of interest because of their investments in mortgage-backed securities ("MBS") and that they rubber-stamp foreclosure actions in favor of lenders. (*See* ECF No. 18 at 5). The Smith have never actually been in Judge Ruehlman's courtroom. (*Id.*). They claim that a major impediment has been Local Rule 10, which requires trial counsel to fill out a form with the Clerk of Courts to receive notification of hearings. (*Id.* at 5–6, 8; ECF No. 23-1). Local Rule 10 does not apply to *pro se* parties like the Smiths. (ECF No. 23 at 3).

The Smiths also took out a mortgage with Chase Bank, the precise date and terms of which are unknown. In 2004, Chase notified the Smiths of issues with the repayment on that mortgage and moved to foreclose on their property. (ECF No. 18-2 at 7, 8). In that proceeding, the Smiths again sought removal to federal court, which was rejected by both the district court and the Sixth Circuit. *See Chase Manhattan Mortg. Corp. v. Smith*, 507 F.3d 910 (6th Cir. 2017).

The final twist to the Smiths' case involves their friend, Denise Hill, who also suffered through the indignity of foreclosure. In 2000, she reached out to Volunteer Lawyers for the Poor ("Volunteer Lawyers"),[2] a legal aid referral program in Cincinnati, seeking legal assistance. (*See* ECF No. 18-2 at 1). Volunteer Lawyers referred Ms. Hill to Mr. Rick D. DeBlasis, an attorney at Lerner Sampson & Rothfuss ("LSR"), who agreed to take on Ms. Hill's case *pro bono*. (*Id.*). That representation apparently was unsuccessful, as Mr. DeBlasis later resigned and Ms. Hill's property at 18 Mulberry St. in Hamilton County, Ohio, was sold at a sheriff's sale on July 28, 2005. (ECF Nos. 18 at 4; 18-1 at 8). That property has since been acquired by Defendant Hamilton County Land Reutilization Corporation ("HCLRC" or "Landbank"), of which Mr. Robert Goering is now the president. (ECF Nos. 18 at 10–11; 18-6). At some point (the timing is unclear), Mr. Goering had previously served as Ms. Hill's bankruptcy attorney. (ECF No. 18 at 10–11).

In the end, Plaintiffs' animating thesis is that the aftermath of the housing bubble was discriminatory and predatory towards communities of color and low-income communities, and that that discrimination has been carried out, at least in the Cincinnati area, through an intricate network of individuals and organizations, some of whom are named as Defendants here. (*See generally id.* at 6–8). Millions of aspiring homeowners took out speculative loans and, when they

---

[2] Volunteer Lawyers for the Poor Foundation operates the Volunteer Lawyers Project, which made the referral at issue but was not named as a defendant by Plaintiffs. (ECF No. 44 at 4).

defaulted on those loans, lost their homes. (*Id.* at 7). The foreclosure crisis has impacted communities of color particularly hard, causing problems that have since been exacerbated in many cities by gentrification and an increasingly unaffordable housing market. (*See id.*). Plaintiffs pinpoint the Over-the-Rhine neighborhood in Cincinnati as an exemplar of this double-edged trend, as the city's push to revitalize the historic neighborhood after the 2001 riots certainly reduced violence but also pushed out a substantial portion of existing Black residents. *See* Colin Woodard, *How Cincinnati Salvaged the Nation's Most Dangerous Neighborhood*, POLITICO (June 16, 2016), https://www.politico.com/magazine/story/2016/06/what-works-cincinnati-ohio-over-the-rhine-crime-neighborhood-turnaround-city-urban-revitalization-213969/. Moreover, as the housing market burst, news stories exposed improprieties within certain segments of the justice system that favored lenders at the expense of the lower- and middle-classes. (*See, e.g.*, ECF Nos. 18-1 at 1; 18-3 at 2). The trials and tribulations suffered by Plaintiffs fit squarely within this intersection of a bursting housing bubble, burgeoning gentrification, and increasing fears that the system is rigged against the lower classes.

### B. Procedural Background

On March 5, 2021, Plaintiffs Demetrious-Yadrifa Smith and Amy-Kathleen Smith filed their original complaint in this case. That complaint (ECF No. 1) named the following defendants: Manley, Deas, and Kochalski, LLC; Lerner, Sampson & Rothfuss, LPA; Judge Robert Ruehlman of the Court of Common Pleas for Hamilton County; Judges Michael R. Barrett and Susan Dlott of this Court; and DOES 1–100. (ECF No. 1 at 1). The Smiths were granted leave to file an amended complaint. (*See* ECF No. 15). The Smiths did so, filing their First Amended Complaint on April 19, 2021, six days after the deadline set by Magistrate Judge Jolson (ECF No. 18). There, the Smiths asserted largely the same claims as they did in the original complaint, but joined Denise

Hill as a plaintiff and Volunteer Lawyers and Landbank as defendants.  (*See* ECF No. 18 at 1).

The Smiths also dropped Judges Barrett and Dlott from the First Amended Complaint.  (*See id.*).

Judge Ruehlman, MDK, the Landbank, and Volunteer Lawyers have all filed motions to dismiss (ECF Nos. 23, 25, 34, 41, 44).  Plaintiffs have also submitted a Motion for Leave to File Second Amended Complaint (ECF No. 19), Motion for Leave to File Second Amended 5.5 Million Dollar Lawsuit (ECF No. 37), Motion to Intervene (ECF No. 47), and Motion to Strike Exhibit #37 (ECF No. 48).  Finally, Defendant Landbank has requested leave to file supplemental pleadings (ECF No. 45).  All motions are now ripe before this Court.

## II.  STANDARD OF REVIEW

A motion to dismiss pursuant to Federal Rules of Civil Procedure 12(b)(6) operates to test the sufficiency of the complaint and permits dismissal of a complaint for "failure to state a claim upon which relief can be granted."  Fed. R. Civ. P. 12(b)(6).  Such a motion "is a test of the plaintiff's cause of action as stated in the complaint, not a challenge to the plaintiff's factual allegations."  *Golden v. City of Columbus*, 404 F.3d 950, 958–59 (6th Cir. 2005) (citing *Gao v. Jenifer*, 185 F.3d 548, 552 (6th Cir. 1999)).  Accordingly, the Court must "construe the complaint in the light most favorable to the plaintiff, accept its allegations as true, and draw all reasonable inferences in favor the plaintiff."  *In re Travel Agent Comm'n Antitrust Litig.*, 583 F.3d 896, 903 (6th Cir. 2009) (quoting *Jones v. City of Cincinnati*, 521 F.3d 555, 559 (6th Cir. 2008)).  Although the court's primary focus will be on the allegations in the complaint, the court may also consider "any exhibits attached thereto, public records, items appearing in the record of the case and exhibits attached to the defendant's motion so long as they are referred to in the Complaint and are central to the claims contained therein."  *Bassett v. Nat'l Collegiate Athletic Ass'n*, 528 F.3d 426, 430 (6th

Cir. 2008). Public records can include, among other items, records from state foreclosure actions. *See Whittiker v. Deutsche Bank Nat'l Trust Co.*, 605 F. Supp. 2d 914, 936–37 (N.D. Ohio 2009).

To survive a motion to dismiss, "the plaintiff must allege facts that, if accepted as true, are sufficient to raise a right to relief above the speculative level and to state a claim to relief that is plausible on its face." *Hensley Mfg. v. ProPride, Inc.*, 579 F.3d 603, 609 (6th Cir. 2009) (internal quotations omitted) (citing *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is considered plausible on its face "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). And though the court "must accept all well-pleaded factual allegations in the complaint as true," the court "need not accept as true a legal conclusion couched as a factual allegation." *Id.* (quoting *Twombly*, 550 U.S. at 555) (internal quotations omitted).

*Pro se* complaints are evaluated according to "'less stringent standards than formal pleadings drafted by lawyers,' and therefore should be liberally construed." *Williams v. Curtin*, 631 F.3d 380, 383 (6th Cir. 2011) (quoting *Martin v. Overton*, 391 F.3d 710, 712 (6th Cir. 2004)). Nevertheless, "basic pleading essentials" are still required. *Wells v. Brown*, 891 F.2d 591, 594 (6th Cir. 1989). Among such essentials are the obligations under Federal Rule of Civil Procedure 8(a) to provide "a short and plain statement of the grounds for the court's jurisdiction," and "a short and plain statement of the claim showing that the pleader is entitled to relief."

### III.  LAW & ANALYSIS

### A.  Preliminary Matters

Before turning to Plaintiffs' motions to amend and Defendants' motions to dismiss, this Court first addresses some preliminary matters.

7

## 1.    Motion for Leave to File Supplemental Memoranda

If Defendant Landbank were granted leave to file supplemental pleading, the contents of the supplemental information would be before the Court for consideration when ruling on the motions to dismiss.   Thus, this Court first addresses Landbank's Motion for Leave to File Supplemental Pleading (ECF No. 45).

This Court treats the motion to file supplemental pleading as, in effect, a request to file a sur-reply.  The Federal Rules of Civil Procedure do not contemplate the filing of sur-replies.  This Court's Local Civil Rules permit additional memoranda only "upon leave of court for good cause shown."  S.D. Ohio Civ. R. 7.2(a)(2).  While the Rules do not define good cause, the Sixth Circuit has noted that additional filings "may be allowed in the appropriate circumstances, especially '[w]hen new submissions and/or arguments are included in a reply brief, and a non-movant's ability to respond to the new evidence has been vitiated.'"  *Key v. Shelby Cnty.*, 551 F. App'x 262, 265 (6th Cir. 2014) (quoting *Seay v. Tenn. Valley Auth.*, 339 F.3d 454, 481 (6th Cir. 2003)).  Even so, courts in the Southern District have permitted parties to file sur-replies without showing good cause where it did not result in prejudice toward the opposing party.  *See Nat'l City Bank v. Aronson*, 474 F. Supp. 2d 925, 930 (S.D. Ohio 2007).  Moreover, the Sixth Circuit has a "strong preference that claims be adjudicated on their merits."  *Coleman v. Shoney's, Inc.*, 79 F. App'x 155, 157 (6th Cir. 2003) (citing *Jourdan v. Jabe*, 951 F.2d 108, 110 (6th Cir. 1991)).  Ultimately, this Court has "broad discretion to manage its docket" in determining whether a movant has shown good cause, *ACLU of Kentucky v. McCreary Cnty.*, 607 F.3d 439, 451 (6th Cir. 2010) (citing *Reed v. Rhodes*, 179 F.3d 453, 471 (6th Cir. 1999)), as long as it ensures that any additional information is "limited to that needed to rebut the positions argued in memoranda in opposition."  S.D. Ohio Civ. R. 7.2(d).

Defendant's Motion for Leave to File Supplemental Memoranda (ECF No. 45) alerts the Court to new and relevant developments in duplicative proceedings before this Court. Further, the attached information does not prejudice Plaintiffs. Accordingly, Landbank's Motion for Leave to File Supplemental Memoranda (ECF No. 45) is **GRANTED**.

### 2.    Motion to Restrict Exhibit

Plaintiffs have filed a Motion to Restrict Exhibit #37 (ECF No. 48), which, pursuant to the liberal construction afforded *pro se* plaintiffs, this Court understands to be a motion to seal the referenced document. Plaintiffs argue that the document (ECF No. 46-1 at 79–83) contains highly confidential information.

In general, "[e]very court has supervisory power over its own records and files." *Nixon v. Warner Commc'ns, Inc.*, 435 U.S. 589, 598 (1978). A court's discretion to seal records from public inspection is, however, limited by the "strong presumption in favor of openness." *Brown & Williamson Tobacco Corp. v. FTC*, 710 F.2d 1165, 111179 (6th Cir. 1983). Therefore, the Sixth Circuit has carved out two exceptions from that presumption, allowing courts to seal documents "based on the need to keep order and dignity in the courtroom" and where necessary to protect "certain privacy rights of participants or third parties, trade secrets, and national security." *Id.* (citing *Nixon,* 435 U.S. at 598). A court must not only consider whether there is a "compelling reason why certain documents or portions thereof should be sealed," but also whether "the seal itself [is] narrowly tailored to serve that reason." *Shane Grp., Inc. v. Blue Cross Blue Shield of Michigan*, 825 F.3d 299, 305 (6th Cir. 2016) (citing *Press-Enter. Co. v. Superior Ct. of California, Riverside Cnty.*, 464 U.S. 501, 509–11 (1984)).

Here, Plaintiffs seek to keep under seal one particular exhibit that contains confidential information of a private individual. (*See* ECF No. 46-1 at 79–83). This Court finds that protecting

9

such information is a compelling rationale, outweighs the public's interest in openness, and is narrowly tailored to the proffered reason. *See Shane Grp.*, 825 F.3d at 305.

Accordingly, for good cause shown and in the absence of any opposition, Plaintiffs' Motion to Restrict Exhibit #37 is **GRANTED** and ECF No. 46-1 is **SEALED**.

### B.      Plaintiffs' Motions to Amend

This Court now turns to three motions from Plaintiffs.  First, Plaintiffs filed a Motion for Leave to File Second Amended Complaint (ECF No. 19) but did not include the proposed amended pleadings.  Second, Plaintiffs filed a further Motion for Leave to File Second Amended 5.5 Million Dollar Lawsuit (ECF No. 37), which did include proposed new pleadings.  Finally, Plaintiffs filed a Motion to Intervene (ECF No. 47) on behalf of themselves.  Pursuant to Federal Rules of Civil Procedure 24, intervention is typically granted to third-parties who seek to participate in a proceeding; it is not, however, a tool used by persons or entities already party to the case.  Given that background, Plaintiffs' Motion to Intervene (ECF No. 47) is likely best characterized as a third motion seeking further amendment to the First Amended Complaint (ECF No. 18).

Additional amendments to pleadings, beyond the first amendment, should be granted "when justice so requires."  Fed. R. Civ. P. 15(a)(2).  In spite of that liberal approach, "[a] district court may deny a plaintiff leave to amend his or her complaint, however, when the proposed amendment would be futile."  *Kottmyer v. Maas*, 436 F.3d 684, 692 (6th Cir. 2006) (citing *Yuhasz v. Brush Wellman, Inc.*, 341 F.3d 559, 569 (6th Cir. 2003)).  Here, Plaintiffs' efforts to amend the First Amended Complaint would certainly be futile.  None of the proposed pleadings addresses any of the legal arguments raised in Defendants' various motions to dismiss the First Amended Complaint, provides new factual allegations that could form the basis of plausible claims, or states any new claims upon which relief can be granted.  In fact, large portions of the amended pleadings

are copied verbatim from the First Amended Complaint. (*Compare* ECF No. 37 at 14–35, *with* ECF No. 18 at 1–25).

Accordingly, Plaintiffs' motions for leave to file an amended complaint (ECF Nos. 19, 37) and motion to intervene (ECF No. 48) are **DENIED**.

### C.    Motion to Dismiss

Plaintiffs have presented a wide-range of claims in their First Amended Complaint (ECF No. 18). As an initial matter, Plaintiffs name-drop civil rights violations, pursuant to 42 U.S.C. §§ 1983, 1985, and 1986, and violations of due process and equal protection under the First, Fourth, and Fifth Amendments of the United States Constitution. (ECF No. 18 at 2). The First Amended Complaint also mentions claims of fraud, civil conspiracy, intentional infliction of emotional distress, and violations of the Administrative Procedures Act. (*Id.*). To provide some organization to Plaintiffs' incohesive pleadings, this Court categorizes Plaintiffs' claims into the following causes of action: (1) violations of the Administrative Procedures Act of 1946 ("APA"), 5 U.S.C. §§ 551–559; (2) violations of the Foreign Agent Registration Act of 1938 ("FARA"), 18 U.S.C. §§ 611–621; (3) violations of the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. §§ 1692–1692p; (4) violations of the Equal Credit Opportunity Act ("ECOA"), 15 U.S.C. §§ 1691–1691f; (5) civil conspiracy; (6) intentional infliction of emotional distress; (7) fraud upon the court; (8) fraud in the concealment; and (9) honest services fraud pursuant to 18 U.S.C. § 1346. For these violations, Plaintiffs request a combination of monetary damages and declarative relief, including a declaration that all orders of Judge Ruehlman are void. (*Id.* at 23).

Defendants have filed five total motions to dismiss for failure to state a claim under Rule 12(b)(6). Defendant Judge Ruehlman has filed two motions to dismiss the First Amended Complaint, in his individual and official capacities (ECF Nos. 23; 25). Defendants MDK,

Landbank, and Volunteer Lawyers have all filed motions to dismiss as well (ECF Nos. 34; 41; 44). This Court addresses each motion to dismiss in turn.

### 1. Judge Ruehlman

This Court interprets the First Amended Complaint, which is lacking in specificity and clarity, to allege the following claims against Judge Ruehlman. First, Plaintiffs appear to suggest that Judge Ruehlman is an "Administstrative Judge [sic]" and has violated the APA by not "insuring procedural rights are being carried out properly in his court." (ECF No. 18 at 11). Second, Plaintiffs argue that Judge Ruehlman is a foreign agent, and therefore is in violation of FARA because he is "not registered with the Attorney General for National Security." (*Id.* at 12). Third, Plaintiffs complain that Judge Ruehlman has conspired with MDK attorneys to hide their real identities and has committed honest services fraud in violation of 18 U.S.C. § 1346. (*See id.* at 19, 21). Finally, and perhaps most fundamentally, Plaintiffs contend that Judge Ruehlman has committed civil rights violations and violations of due process and equal rights, presumably based on the alleged unconstitutionality of Local Rule 10's filing requirement and on the allegedly-biased manner by which Judge Ruehlman decides cases. (*Id.* at 17–19).

To the extent that Plaintiffs seek monetary damages for alleged misconduct, this Court finds that Defendant Judge Ruehlman is entitled to judicial immunity. It is well-established that judges "enjoy judicial immunity from suits arising out of the performance of their judicial functions." *Leech v. DeWeese*, 689 F.3d 538, 542 (6th Cir. 2012) (quoting *Brookings v. Clunk*, 389 F.3d 614, 617 (6th Cir. 2004)). Judicial acts encompass "function[s] normally performed by the judge," particularly when the judge is interacting with the parties "in his judicial capacity." *Stump v. Sparkman*, 435 U.S. 349, 362 (1978). This immunity applies, too, in cases involving civil rights violations pursuant to 42 U.S.C. § 1983. *Cooper v. Parrish*, 203 F.3d 937, 944 (6th

Cir. 2000) (citing *Mireles v. Waco*, 502 U.S. 9, 9–10 (1991)); *see Stump*, 435 U.S. at 356–57. Judges are entitled to absolute immunity even where they have acted improperly, *see, e.g.*, *Cooper*, 203 F.3d at 945 (6th Cir. 2000), but this protection is not without any limits altogether; it gives way when a judge acts even though he "knows he lacks jurisdiction, or acts in the face of clearly valid statutes or case law expressly depriving him of jurisdiction." *Schorle v. City of Greenhills*, 524 F. Supp. 821, 828 (S.D. Ohio 1981) (internal citations omitted).

In the present case, Judge Ruehlman's actions qualify him for judicial immunity.  He is a judge of the Court of Common Pleas for Hamilton County.[3]  In the state of Ohio, common pleas courts have "subject-matter jurisdiction over actions in foreclosure." *Bank of Am., N.A. v. Kuchta*, 141 Ohio St.3d 75, ¶ 20, 2014-Ohio-4275, 21 N.E.3d 1040, 1046 (Ohio 2014); *see also* Ohio Rev. Code § 2305.01.  And within that court, the Smiths' case was properly assigned to Judge Ruehlman.  *See* ECF No. 34-1 (foreclosure docket).  As the Smiths own property and had a mortgage on that property in Hamilton County, the Court of Common Pleas for Hamilton County — and specifically, Judge Ruehlman — properly had jurisdiction over the foreclosure proceeding. Finally, Judge Ruehlman's actions are certainly "judicial acts"; after all, presiding over and rendering judgment in a foreclosure proceeding falls squarely within the realm of "function[s] normally performed by a judge." *Stump*, 435 U.S. at 362.  In short, Judge Ruehlman is entitled to judicial immunity against all claims by Plaintiffs seeking monetary damages.

Plaintiffs' raises four objections to this analysis.  The Smiths suggest that Judge Ruehlman is not entitled to judicial immunity "because the court did not have jurisdiction over a state citizen

---

[3] Plaintiffs argue that Judge Ruehlman is actually an administrative law judge.  Public records, however, demonstrate that Judge Ruehlman is who he says he is: a judge of the Common Pleas Court.  *See* Honorable Robert P. Ruehlman, HAMILTON CNTY. CTS., https://hamiltoncountycourts.org/index.php/common-pleas-court-judge-robert-p-ruehlman-3/.

without an injured party." (ECF No. 18 at 12). They also suggest that the foreclosure proceeding was missing a "verified affidavit" and that the Ohio foreclosure statute lacks the three necessary elements of a valid legislative enactment under the Ohio state constitution. (*Id.* at 13). Finally, Plaintiffs allege that "[s]tate court has no jurisdiction over a dispute between a State citizen and a foreign agent." (*Id.* at 14). None of these objections stands up to scrutiny. The foreclosure proceeding did have an injured party — the lender whose money was not repaid; Bank of America, the foreclosing party, is not a foreign agent; and, though the codified version of the statutes does not contain the "Be it enacted that" language referenced by Plaintiffs, *see* OHIO CONST. art. II, § 15, the passage of the statute did conform to the requirements of the Ohio state constitution. *See* Act of Sept. 11, 2008, H.B. No. 138, 2007 Ohio Legis. Serv. 545 (West). Plaintiff has not pled any factual allegations to the contrary.

In addition to monetary damages, Plaintiffs also asks this Court to declare all of Judge Ruehlman's orders void. (ECF No. 18 at 23). This Court declines. Pursuant to the *Rooker-Feldman* doctrine, federal courts generally refrain from exercising jurisdiction over challenges to state court decisions, unless otherwise authorized by Congress to do so, but may assert jurisdiction over independent federal claims. *See McCormick v. Braverman*, 451 F.3d 382, 393 (6th Cir. 2006). The *Rooker-Feldman* doctrine does not prohibit "a district court from exercising subject-matter jurisdiction simply because a party attempts to litigate in federal court a matter previously litigated in state court," but instead "is confined to cases of the kind from which the doctrine acquired its name: cases brought by state-court losers complaining of injuries caused by state-court judgments rendered before the district court proceedings commenced." *Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280, 284 (2005). Critics of *Rooker-Feldman* have noted that the doctrine

14

has spiraled beyond its original bounds, "interfering with efforts to vindicate federal rights." *VanderKodde v. Mary Jane M. Elliott, P.C.*, 951 F.3d 397, 405 (Sutton, J., concurring).

This case presents exactly the type of claims that *Rooker-Feldman*, even in its original, narrow scope, seeks to keep out of federal courts; Plaintiffs here are state-court losers asking a federal court to review state court judgments, rather than decisions from another independent source, and declare them "void." *See McCormick*, 451 F.3d 382 at 392–93.

Accordingly, as Plaintiffs' claims against Judge Ruehlman are all barred by judicial immunity or the *Rooker-Feldman* doctrine, Defendant Judge Ruehlman's Motion to Dismiss in his individual capacity (ECF No. 23) and Motion to Dismiss in his official capacity (ECF No. 25) are **GRANTED**.

### 2.    Manley, Deas, and Kochalski, LLC

The primary allegations against Manley, Deas, and Kochalski, LLC, in Plaintiffs' First Amended Complaint turn on questions of identity.  Plaintiffs allege that MDK is not just a law firm, but also "a third party debt collection agency" and the "Real Parties in Interest [sic]" in the foreclosure proceedings against the Smiths.  (ECF No. 18 at 11, 13).  And because MDK is, apparently, a debt collection agency masquerading as a law firm, they have allegedly violated the FDCPA and the EOCA, conspired with Judge Ruehlman to hide their true identities, and committed various forms of fraud.  (*Id.* at 13, 16–19).  A second question of identity arises out of Plaintiffs' claims that unnamed attorneys at MDK are in violation of FARA for being foreign agents that have not registered with the Attorney General.  (*Id.* at 12).  Finally, Plaintiffs suggest that MDK has committed intentional infliction of emotional distress, by filing the foreclosure action and reporting the mortgage default to consumer-reporting agencies.  (*Id.* at 17–18, 20).

As an initial matter, Plaintiffs' conclusory claim that MDK is not just a law firm, but really a debt collection agency hiding behind the façade of a law firm, is not supported by any factual allegations in the First Amended Complaint. *See Twombly*, 550 U.S. at 555 (noting that "a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions"). And without that basic premise, several of Plaintiffs' claims against MDK fall short of the required pleading standard. Consider the statutory claims. The ECOA bars "creditors" from discriminating against applicants "on the basis of race, color, religion, national origin, sex or marital status." 15 U.S.C. § 1691(a)(1). Without a plausible allegation that MDK is a "creditor" as defined in the ECOA, *see id.* § 1691a(e), Plaintiffs' claim that MDK have violated the ECOA cannot stand. A careful reading of the FDCPA leads to the same conclusion for those claims against MDK. To allege a plausible claim under the FDCPA:

> (1) plaintiff must be a "consumer" as defined by the Act; (2) the "debt" must arises [sic] out of transactions which are "primarily for personal, family or household purposes;" (3) defendant must be a "debt collector" as defined by the Act; and (4) defendant must have violated § 1692e's prohibitions.

*Woodard v. O'Brien*, 415 F. Supp. 3d 794, 793 (S.D. Ohio 2019) (quoting *Wallace v. Washington Mut. Bank, F.A.*, 683 F.3d 323, 326 (6th Cir. 2012)). Plaintiffs have not provided a factual basis for the claim that MDK is a "debt collector," as defined by the act, nor that MDK has acted in a deceptive manner in holding itself out as counsel for Bank of America in the foreclosure proceedings. As a result, this Court finds Plaintiffs' allegations that MDK has violated the FDCPA or the EOCA to be conclusory at best.

Plaintiffs have also failed to plead factual allegations that MDK has violated the FARA. The First Amended Complaint simply states that "the attorneys for MDK are not registered with the Attorney General for National Security and are in violation of FARA codified at 22 U.S.C. §

16

611 et seq." (ECF No. 18 at 12).  The complaint does not, however, allege with any specificity which attorneys at MDK are foreign agents, which countries they are foreign agents of, or any other information that would form a factual basis on which the Court could infer the plausibility of Plaintiffs' claim.

The common law claims against MDK suffer from the same flaws.  Because Plaintiffs have failed to provide any factual allegations that MDK is a lender, Plaintiffs have thus also failed to provide a sufficient basis for their claims that MDK has conspired with Judge Ruehlman to hide their (allegedly) true nature as a lender or that MDK has committed fraud for the same act.  After all, MDK cannot be hiding their "real" identity as a lender if MDK is not, in fact, a lender.  And with respect to the intentional infliction of emotional distress ("IIED") claim, the First Amended Complaint is also lacking.  To prove a claim for IIED under Ohio law, a plaintiff must show that:

> (1) the defendant either intended to cause emotional distress or knew or should have known that the actions taken would result in serious emotional distress; (2) the defendant's conduct was "extreme and outrageous"; (3) the defendant's actions proximately caused psychic injury; and (4) the mental anguish suffered by the plaintiff was serious, and no reasonable person could be expected to endure it.

*Heimberger v. Pritzker*, 2014 WL 1050341, at *10 (S.D. Ohio Mar. 17, 201) (citing *Ekstrom v. Cuyahoga Cnty. Comty. Coll.*, 779 N.E.2d 1067, 1076 (Ohio Ct. App. 2002)).  The Smiths have not alleged any facts demonstrating that MDK intended to cause emotional distress, that MDK's actions in representing their client in the foreclosure proceeding were extreme and outrageous, or that MDK caused mental anguish beyond the capacity of a reasonable person to endure.  As such, Plaintiffs have failed to plead sufficient facts to allege a plausible claim of IIED against MDK.

Accordingly, Defendant Manley, Deas, and Kochalski, LLC's Motion to Dismiss (ECF No. 34) is **GRANTED** on all counts.

### 3.     Hamilton County Land Reutilization Corporation

Although the First Amended Complaint (ECF No. 18) lists the Hamilton County Land Reutilization Corporation as a defendant, the complaint does not allege that Landbank has committed any misconduct or violated any laws.  (*See id.* at 11–22 (listing Plaintiffs' causes of action without any mentions of Landbank); ECF No. 41-1).  Nor are there any suggestions in the complaint that Landbank has had any interactions, contact, or transactions with the Smiths or Ms. Hill.  (*See generally* ECF No. 18).  In keeping with the liberal construction afforded to *pro se* litigants, this Court interprets Plaintiffs' issues with Landbank to center on the allegation that Mr. Robert Goering, who now heads Landbank, first as a bankruptcy lawyer represented Ms. Hill and later purchased Ms. Hill's property at foreclosure.  (*See id.* at 10–11).  Plaintiffs also suggest that the manner in which Ms. Hill was evicted was unconscionable.  (*Id.* at 11).

None of the above-mentioned misconduct involves Landbank.  Landbank did not exist at the time Ms. Hill's property was foreclosed, nor at the time when Mr. Goering purchased Ms. Hill's property.  (ECF No. 41 at 2).  Landbank's only connections with Plaintiffs are its current ownership over Ms. Hill's former property, which it acquired more than ten years after the foreclosure proceedings, and the fact that it employs Mr. Goering.  (*Id.*; ECF No. 18-1 at 8).  But even the connection via Mr. Goering is insufficient to sustain Plaintiffs' claims, as Ms. Hill's allegations are entirely against Mr. Goering in his personal capacity and not in his capacity as the head of Landbank (especially since Landbank did not exist during the time period where Mr. Goering and Ms. Hill would have interacted).  In short, Plaintiffs have failed to provide any factual allegations relating to Landbank or to state a claim against Landbank.

Accordingly, Landbank's Motion to Dismiss (ECF No. 41) is **GRANTED** on all counts.

#### 4.  Volunteer Lawyers for the Poor

It is not entirely clear from the First Amended Complaint which of Plaintiffs' various claims are attributed to Volunteer Lawyers; the organization is accused of "being deceptive when they referred Denise [Hill] to a foreclosure firm to be her attorney" pursuant to 18 U.S.C. § 1346, but is not mentioned anywhere else in Plaintiffs' claims.  (*See* ECF No. 18 at 21).  That provision of the federal criminal code simply defines "the term 'scheme or artifice to defraud' [to] include a scheme or artifice to deprive another of the intangible right of honest services."  18 U.S.C. § 1346. Generally, courts "have been quite reluctant to infer a private right of action from a criminal prohibition alone," *Cent. Bank of Denver, N.A. v. First Interstate Bank of Denver, N.A.*, 511 U.S. 164, 190 (1994), and this statute — which includes "absolutely no indication that civil enforcement of any kind was available to anyone" — likewise does not give rise to a private cause of action. *Marx v. Centran Corp.*, 747 F.2d 1536, 1549 (6th Cir. 1984) (quoting *Cort v. Ash*, 422 U.S. 66, 80 (1975)); *see Stephens v. Nat'l City Corp.*, 2020 WL 435439, at *7 (N.D. Ohio Jan. 28, 2020) (finding that 18 U.S.C. § 1349 "do[es] not create private rights of actions").  Thus, Plaintiffs' claims of honest services fraud against Volunteer Lawyers falls flat.

Fundamentally, Ms. Hill's real complaint is that Volunteer Lawyers made a mistake when the organization referred her to Mr. DeBlasis for pro bono assistance.  (*See* ECF No. 18 at 21).  In other words, Plaintiffs accuse Volunteer Lawyers of legal malpractice.  *See Thut v. Canala*, 2005-Ohio-4335, ¶ 17, 2005 WL 2000744, at *3 (Ohio Ct. App. 2005) ("[I]t is well settled that an action by a client against his attorney for damages resulting from the manner in which the attorney represented, or failed to represent, the client, constitutes an action for malpractice . . . irrespective of whether the action is predicated upon tort or contract." (citing *Muir v. Hadler Real Estate Mgmt. Co.*, 446 N.E. 2d 820 (Ohio Ct. App. 1982)).  There are two problems with this claim.  First, the

statute of limitations for claims of legal malpractice is one year after the cause of action accrues. Ohio Rev. Code § 2305.11(A).  Here, Plaintiff Ms. Hill's problems with Volunteer Lawyers stem from a referral that the organization gave in 2000.  (*See* ECF No. 18-2 at 1).  As the First Amended Complaint (ECF No. 18) was filed in April 2021 (and the initial Complaint (ECF No. 1) was filed in March 2021), the one-year statute of limitations had long since passed on Ms. Hill's legal malpractice claim.[4]  Second, state courts have determined that "only individuals may practice law in Ohio" whereas "a law firm does not engage in the practice of law and therefore cannot directly commit legal malpractice."  *Nat'l Union Fire Ins. Co. of Pittsburgh, PA v. Wuerth*, 122 Ohio St.3d 594, ¶¶ 16, 18, 2009-Ohio-3601, 913 N.E.2d 939, 943 (Ohio 2009).  Plaintiffs have not named any individuals at Volunteer Lawyers who are culpable for the malpractice; instead, Plaintiffs have only named as defendant the organization itself, which cannot commit malpractice on its own.

Accordingly, Defendant Volunteer Lawyers for the Poor's Motion to Dismiss (ECF No. 44) is **GRANTED** on all counts.

## IV.     CONCLUSION

For the reasons discussed above, Plaintiffs' motions for leave to file an amended complaint (ECF Nos. 19, 37) and motion to intervene (ECF No. 47) are **DENIED**.  Defendant Judge Ruehlman's Motion to Dismiss Amended Complaint (ECF No. 26) is **DENIED AS MOOT**. Defendant Landbank's Motion for Leave to File Supplemental Pleadings (ECF No. 45) is **GRANTED**.  Plaintiffs' Motion to Restrict Exhibit #37 (ECF No. 48) is **GRANTED** and ECF

---

[4] Plaintiff Ms. Hill has not proposed any reasons for why the statute of limitations should be tolled or argued that she did not discover the alleged malpractice until within one-year of filing the complaint in this case.

No. 46-1 is **SEALED**.  Defendants' motions to dismiss (ECF Nos. 23, 25, 34, 41, 44) are **GRANTED**.

       **IT IS SO ORDERED.**

                                        **ALGENON L. MARBLEY**
                                        **CHIEF UNITED STATES DISTRICT JUDGE**

**DATE:  September 30, 2022**